THE PEOPLE OF THE STATE OF NEW YORK ex rel.
NATHAN B. WARREN AND OTHERS, RESPONDENTS, *v.*
EDWARD CARTER AND OTHERS, GENERAL ASSESSORS OF
THE CITY OF TROY, AND JOHN D. SPICER, COMPTROLLER
OF THE CITY OF TROY, APPELLANTS.

*Proceedings to review unjust or unequal assessments — a reduction will be made when*
*one parcel is assessed at a higher proportionate valuation than other real property*
*in the immediate vicinity — the assessors are proper parties to the writ.*

Upon an appeal from an order made at Special Term, reducing the assessed
valuation of a parcel of real estate belonging to the relators, it appeared that the
court determined to compare the valuation of the relator's parcel with that
of other real property in immediate proximity thereto, and finding that the
valuation of the relators' property was unequal, in that it was made at a higher
proportionate valuation than was made upon two other lots on the same street,
adjoining the relators' property on the south, reduced the valuation made by
the assessors.

*Held,* that the order should be affirmed. (PARKER, J., dissenting.)

The strict rules respecting the admissions of testimony which are applicable to
trials do not prevail in proceedings of this character.

*People ex rel. Railroad Company* v. *Keator* (36 Hun, 596) followed.

That an objection that the assessors should not have been made parties to the writ,
because it appeared that they had completed their assessment-roll and delivered
it to the comptroller of the city, could not be maintained.

That they should be permitted to appear and defend their own action and be
heard upon the question as to which of the several judgments authorized by the
act should be directed, in case relief should be awarded to the relators.

APPEAL from a judgment of the Supreme Court entered in
Rensselaer county, June 27, 1887, reducing assessments against two
pieces of real property of the relators, from $60,500 to $40,000, and
from $29,000 to $25,500, respectively, and directing that the amount
of taxes paid in excess of the taxes on the corrected assessments be
repaid, with interest.

The proceedings of the relators were instituted September 13,
1886, under chapter 269 of the Laws of 1880. One piece of prop-
erty known as "River View," situated on the high bluff east of the
Hudson River railroad, in the city of Troy, was assessed for the year
1886 at $60,500. This assessment was reduced to $40,000, on the
ground that the full value of the property was not over $40,000.
The second portion consists of two houses and lots on Third street,

assessed at $29,000, which was reduced to $25,500, on the ground that other property in the neighborhood was assessed at a lower proportionate valuation than that owned by the relators.

*R. A. Parmenter,* for the appellants.

*G. B. Wellington* for the respondents.

LANDON, P. J.:

The assessed valuation of the "River View" property was reduced by the Special Term because of overvaluation. The evidence tended to show and was sufficient to justify the finding that the property was valued upon the assessment-roll for much more than it was worth. The order as to this property should be affirmed upon the merits. The valuation of the other parcel was reduced because it was unequal, in that it was made at a higher proportionate valuation than other real property upon the same roll. This was compared with two lots on the same side of the same street and adjoining it on the south. The evidence justified the finding that the relators' parcel compared with these two lots was overvalued.

In respect to proportionate valuation; to how wide a range the comparison shall extend, must obviously rest largely in the discretion of the court. It does not appear, nor do the defendants complain, that they did not have an opportunity to make as many comparisons as they thought would be instructive. The court after hearing all the evidence, decided to compare the valuation of the relator's parcel with that "of other real property in immediate proximity thereto." If the court had rejected comparison with such property and made it with property in some distant part of the city, we should at least have looked for an explanation. We see no reason to doubt that the court acted judiciously and decided properly.

The defendants complain of rulings respecting the admission of testimony. We have held that the strict rules applicable to trials do not prevail in this kind of proceeding. (*People ex rel. R. R. Co. v. Keator,* 36 Hun, 596.) We have examined the exceptions urged by the defendants and do not think any error to their prejudice was committed.

It is objected that the assessors should not have been made par-

ties to the writ, because it appeared that they had completed their assessment-roll and delivered it to the comptroller of the city. The statute under which the proceeding is taken (Laws 1880, chap. 269), provides that " the writ shall not be granted unless application therefor shall be made within fifteen days after the completion and delivery of the assessment-roll, and notice thereof given as provided in this act." (Sec. 2.) The application was made within the time prescribed. The same section provides that the allowance of the writ shall not stay the proceedings of the assessors or other officers to whom it is directed. The court may order such assessment stricken from the roll or order a reassessment, or that it be corrected, or that the amount of excessive tax paid by the relator be audited and allowed him. (Secs. 4, 8.) It is plain that the assessors are proper parties to the writ. They should be permitted to defend their own action; they may be required to correct it and they ought to be heard upon the question, which of the several judgments should be directed, in case relief is to be awarded to the relator. They are public officers and are not chargeable with costs in the first instance, unless " they acted with gross negligence, in bad faith or with malice."

The order or judgment should be affirmed, with ten dollars costs and printing disbursements.

FISH, J., concurred.

PARKER, J., dissenting.

I cannot assent to the proposition that chapter 269 of the Laws of 1880 was intended to, or does, authorize the court to reduce an assessment simply because an aggrieved taxpayer can find upon the assessment-roll a piece of real property assessed at a lower proportionate valuation than this own. Whether it be in the immediate proximity or not does not in any wise affect the question.

If one person has a right to demand that the court reduce his assessment to the same proportionate valuation as that of the lowest assessment in the town or city where the property is situated, then all who may have been assessed at a higher proportionate rate have the same right. Therefore, if the average per centage of assessment in a town or city be ninety per cent, and two or three parcels can be found which have been assessed at sixty per cent, every

owner of real estate assessed above sixty may obtain a writ of *certiorari* for the purpose of obtaining a decree of the court reducing his assessment to a sum equal to sixty per cent of its real valuation. An attempted enforcement of the right (for right it is if the decision appealed from be sound) would result in an amount of litigation which would prove burdensome to taxpayers, impose useless and unwise labor upon the courts, and to a great extent substitute the judgment of courts for that of assessors in the assessment of real estate, a substitution likely to produce a less accurate result in a majority of instances, if for no other reasons than that the court does not have an opportunity to examine the property, and because the judgment of two competent men (for that is what the law presumes assessors to be) are better than one.

It is the policy of the law that each piece of real estate shall bear its just and true proportion of the necessary burdens of government and no more. If an owner of property assessed, because of overvaluation or a higher proportionate valuation than the residue of the property assessed in his town or city, will be compelled to bear *more than his proportion* of the public burden, he has just cause of complaint and is entitled to redress, otherwise not. For if the relator be only compelled to pay his proper proportion of the taxes, and some person because of undervaluation pays less, it follows that some other owner or owners are the aggrieved parties entitled to redress. He is certainly not entitled to the relief which of right belongs to them, and a waiver of the remedy which the law affords by those actually aggrieved cannot by any known rule of law be held to be for his benefit.

It has ever been the law of this State that each piece of property should bear its full proportion of the burden of taxation and no more. Chapter 269 of the Laws of 1880 was not intended to and does not change the law in that respect. It was intended to and does provide a remedy to an aggrieved party when, because of error or impartiality on the part of assessors, the object and intent of the law is thwarted, and it should be so construed by the courts. If the legislature had intended to do that which the court below by its adjudication says that it did do, the words "*some* or *any*" would have appeared before the word "other" in the sentence, a portion

of which is as follows, " at a higher proportionate valuation than *other* real or personal property on the same roll by the same officers." Neither of those words were used and the act should not be construed as if one of them were. The relator did not prove or attempt to prove that the real estate described as " lot 194 and houses forty-seven and forty-nine west side Third street," was assessed at a higher proportionate valuation than the residue of the real estate upon the same roll, and therefore he failed to make out a case entitling him to the relief granted by the Special Term.

I advise that the order appealed from be reversed.

Order affirmed, with ten dollars costs and disbursements.